## AGNELLO ET AL. *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 6.   Argued April 23, 1925.—Decided October 12, 1925.

1. The right without a search warrant contemporaneously to search
   persons lawfully arrested while committing crime and to search the
   place where the arrest is made in order to find and seize things
   connected with the crime as its fruits or as the means by which it
   was committed, as well as weapons and other things to effect an
   escape from custody, is not to be doubted.   P. 30.

2. But this right, which is incidental to the arrest, can not extend to
   the search of a man's dwelling, several blocks distant from the place
   of his arrest, after the offense has been committed, and while he
   is in custody elsewhere.   *Carroll* v. *United States,* 267 U. S. 132,
   distinguished.   *Id.*

3. So *held,* assuming that the house searched, which was the house of
   one A who had shortly before been arrested with others who were
   in the act of consummating a conspiracy to violate the Anti-
   Narcotic Act by selling cocaine without having registered and paid
   the prescribed tax, was the place from which the cocaine sold had
   been taken by some of the defendants to the place of sale; and that
   other cocaine, discovered in the house by the search, was there in
   A's control in violation of the Act, was subject to forfeiture there-
   under, and was part of the cocaine constituting the subject-matter
   of the conspiracy.   *Id.*

4. Belief, however well founded, that an article sought is concealed
   in a dwelling house, furnishes no justification for a search in the
   house without a warrant; such searches are unlawful notwithstand-
   ing facts unquestionably showing probable cause.   P. 32.

5. When properly invoked, the Fifth Amendment protects every per-
   son from incrimination by the use of evidence obtained through
   search or seizure made in violation of his rights under the Fourth
   Amendment.   P. 33.

6. Where, by uncontroverted facts, it appears that a search and seiz-
   ure were made in violation of the Fourth Amendment, there is no
   reason why one whose rights have been so violated and whom it
   is sought to incriminate by evidence so obtained, may not in-
   voke protection of the Fifth Amendment immediately, by objection

to the evidence, without having made any application for the return of the thing seized. P. 34.

7. Evidence of an unlawful search of an accused person's house and of seizure therein of an incriminating article, can not be introduced against him at the trial as evidence in rebuttal of his testimony on cross-examination that he never saw the article. P. 35.

8. Where several are tried jointly and convicted for conspiracy, erroneous admission of evidence of an unlawful search and seizure in the dwelling of one will not require a reversal as to the others, if the evidence was adduced only against the one, in proof of guilty knowledge and intent in performing acts with the others for executing the conspiracy, since they would be equally guilty whether he acted as guilty participant or as their innocent agent. P. 35.

290 Fed. 671, reversed in part; affirmed in part.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a conviction and judgment in the District Court on a prosecution of the petitioners (named in the opinion) for conspiracy to violate the Federal Narcotic Tax Act.

*Mr. George Gordon Battle,* with whom *Mr. Isaac H. Levy* was on the briefs, for petitioners.

There was error in the admission, over proper objection, of evidence obtained by an unlawful search and seizure. *Youmans* v. *Commonwealth,* 189 Ky. 159; *People* v. *Chiagles,* 237 N. Y. 193; *Entick* v. *Carrington,* 19 How. St. Trials, 1029; *Burns* v. *Erben,* 40 N. Y. 463. *People ex rel. Kingsley,* 22 Hun, 300, distinguished.

This Court has without deviation applied the principle that a search of person or of residence, or a seizure of property or effects, may not be had for the mere purpose of obtaining evidence. In contrast with this simple rule, we have here suggested for the first time a test derived, not from the words of the Amendment, but from an exception to the rule. The reasonableness and justification of the arrest, are made the standards for determining the reasonableness of the search, or of the right to make it. And the exception to the rule that permits a person at the

time of arrest to be searched for the instruments of his offense, or to deprive him of the means of resistance or escape, grows not only to over-shadow, but to supplant the rule to which it is an exception. With the result that the belief of a revenue agent is made to satisfy the provision of the Constitution that secures home and person against search until a magistrate entrusted with judicial functions is satisfied by oath that there exists probable cause for the search.

The decision of the Circuit Court of Appeals is contrary to the decisions of this Court. *Boyd* v. *United States,* 116 U. S. 616; Cooley's Const. Lim., p. 374; Hale, 2 P. C., p. 150; *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385; *Entick* case, *supra; Weeks* v. *United States,* 232 U. S. 383; *Amos* v. *United States,* 255 U. S. 313.

Even upon the principle adopted by the court below, the search by the officers was not justified, since they did not have such probable cause as would have justified the issuance of a search warrant. Cooley Const. Lim., p. 367. The possession of opium is not an offense under the Harrison Act. A warrant to search the premises for narcotics cannot be granted merely upon proof that narcotics will be found upon the premises, but upon proof that a crime against the statute of the United States is being committed upon the premises by the sale of narcotics. Narcotics are not forfeitable to the United States. Search warrants, it is said in *Gouled* v. *United States,* 255 U. S. 309, "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders

possession of the property by the accused unlawful and provides that it may be taken."

The Revenue Agents had no information that justified the issuance of a search warrant upon the ground that a crime was being committed at No. 167 Columbia Street. Assuming that the information they possessed was probable cause to believe that cocaine would be found in the bedroom, then a search warrant issued after the arrest would have been a warrant to search for evidence. No search is reasonable if the officer who makes it would have been unable to make oath or affirmation to facts that would establish probable cause, and would designate the place or person to be searched, *Ganci* v. *United States,* 287 Fed. 65. " Probable cause " as used in the Fourth Amendment does not mean mere inference or supposition. The oath or affirmation required must be as to facts. The purpose of an oath is to subject the affiant to prosecution for perjury if he bears false witness. The court or magistrate acts judicially. It is obvious, therefore, that the ground of belief and the basis of probable cause must consist of facts, and not mere suppositions.

The Court is confined to the facts shown by the record to have been known to the particular agents who made the search. The search cannot be justified by its results; nor by what the officers who made the search may later have learned from the stool pigeons, Dispenza and Napolitana.

The indictment does not state facts sufficient to constitute a crime. It does not charge a conspiracy to sell within the United States. The sale of cocaine without the United States is not an offense.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

The article seized was not a thing which had merely evidentiary value, but a thing inherently vicious, used

as the means of committing crime, analogous to burglars' tools or lottery tickets. *Commonwealth* v. *Dana,* 2 Metc. (Mass.) 329. In the second place, the seizure was practically contemporaneous with the arrest. The arrest was lawfully made without a warrant, for a felony committed in the actual sight and presence of the officers; and, immediately thereafter, a search was made in the place whence the officers themselves had just seen the culprits emerge. This search disclosed the can of cocaine hydrochloride, an article used in the commission of crime, in the bedroom of one of the persons just arrested. Finally, no demand was made by the defendants, either before or during the trial, for the return of the articles seized, although they must have known of the seizure. *Adams* v. *New York,* 192 U. S. 585; *Weeks* v. *United States,* 232 U. S. 383.

An officer who arrests a person for felony committed in his presence may search not merely the person, but also the place where he is discovered, and other places in the immediate vicinity which are clearly indicated as having formed part of the scene of the crime. *Dillon* v. *O'Brien,* 16 Cox C. C. 245; *Getchell* v. *Page,* 103 Me. 387; *Kneeland* v. *Connally,* 70 Ga. 424; 1 Bishop, Cr. Proc., § 211 (2d Ed.); 1 Wharton, Cr. Proc., § 97 (10th Ed.). The foregoing were cited with approval in *Carroll* v. *United States,* 267 U. S. 132. See also, *People* v. *Chiagles,* 237 N. Y. 193, affirming 204 App. Div. 706; *People* v. *Cona,* 180 Mich. 641; *Smith* v. *Jerome,* 47 Misc. (N. Y.) 22; *State* v. *Mausert,* 88 N. J. L. 286; *Closson* v. *Morrison,* 47 N. H. 482; *Spalding* v. *Preston,* 21 Vt. 9. The Constitution protects from unreasonable searches. It is admitted that searches are not necessarily reasonable when they are made under warrants, for the warrant may have been issued for an improper purpose. *Robinson* v. *Richardson,* 13 Gray (Mass.), 454. A search without warrant may be reasonable when made upon probable

cause. *Carroll* v. *United States, supra.* Sanctity of the home is no greater than sanctity of the person. Indeed, the immunity of the person from arbitrary arrest is more highly prized than the immunity of the home from arbitrary search.

The officers were undoubtedly apprised by their senses that a crime was committed in their presence by the selling of narcotics at 138 Union Street. They were also apprised by their senses that the instrument of the crime was concealed in the places where the search was afterwards made. Two of the officers saw the sale through the window. Two had seen all the defendants (except Alba) emerge from No. 167 Columbia Street a few minutes before the arrest. The Government's informers, Napolitano and Dispenza, had been told by Centorino that he would go out to his friend's house and bring back the stuff. The officers knew, before making the arrests, that a sale of drugs would be consummated at 138 Union Street. They knew, moreover, that the supply was coming from some other house in the vicinity. But until the night of the arrests there was nothing to show them from which house; so it would have been impossible to apply for a search warrant in advance.

It is submitted that where an officer may arrest without warrant, he may also at that same time search without warrant in any place in the immediate vicinity where it is clearly indicated that the instruments of the crime (not evidence merely) are hidden. *Milam* v. *United States,* 296 Fed. 629; *Lambert* v. *United States,* 282 Fed. 413; *Vachina* v. *United States,* 283 Fed. 35; *McBride* v. *United States,* 284 Fed. 416; *Herine* v. *United States,* 276 Fed. 806; *United States* v. *Hart,* 214 Fed. 655; *Ex parte Morrill,* 35 Fed. 261. According to the rule laid down in the case last cited, it might well be argued that a crime was committed in the presence of the officers, not only at 138 Union Street, the place of the arrest, but also at 167

Columbia Street, the place of the search. The officers had probable cause for the search as well as for the arrest under the recent decision of this Court in the *Carroll case, supra.* Cf. *Stacey* v. *Emery,* 97 U. S. 642. And upon this theory, the search would of itself be clearly valid, even when viewed apart from the arrest.

No demand was made on behalf of Agnello or any of the other defendants for the return of the narcotic, although they must have known of the seizure. There is not a word in the record to show that the defendants were taken by surprise by the introduction in evidence of the seized article. Even after the Government had sought, unsuccessfully, to introduce the seized article as part of its main case, the defendants made no motion for its return, but contented themselves with objecting to its admission in evidence. Under these circumstances, there is no room to apply *Gouled* v. *United States,* 255 U. S. 298, or *Amos* v. *United States,* 255 U. S. 313.

This Court has never receded from the doctrine enunciated in *Adams* v. *New York,* 192 U. S. 585, and *Weeks* v. *United States,* 232 U. S. 383, that a collateral issue as to the source of evidence will not be permitted to interrupt a criminal trial, unless the ground has been prepared by a timely motion for the return of the articles alleged to have been wrongly taken. *Weeks* v. *United States* lays down the requirement of a preliminary motion for the return of articles unlawfully seized. *Gouled* v. *United States* dispenses with the necessity for this motion where it is obvious that the defendant is taken by surprise and had no opportunity to make the motion before trial.

Again, the evidence of the search was used only as a medium of discrediting the witness, and was not used as a direct part of the Government's main case, or as an indirect clue toward obtaining other evidence. In this respect the case differs from all the previous cases in which this Court has discountenanced the practice of unlawful

search and seizure to obtain evidence on which to build up a case against the defendant. Here the Government's case was complete without resort to the evidence of the search; and the error, if it existed, was not prejudicial. *Laughter* v. *United States,* 259 Fed. 94, 100. Certiorari denied, 249 U. S. 613; Judicial Code, § 269, as amended by Act of February 26, 1919, c. 48, 40 Stat. 1181; *Hall* v. *United States,* 277 Fed. 19; *Rich* v. *United States,* 271 Fed. 566.

In any event, the evidence of the search and seizure tended to prejudice only the defendant Agnello. The other defendants are not entitled to object. The case against them was complete without that evidence, and the jury was fully warranted in finding them guilty. *Hyde* v. *United States,* 225 U. S. 347; *Isaacs* v. *United States,* 159 U. S. 487.

The indictment states that the defendants conspired in Brooklyn, and sets forth as one of the overt acts a transportation and sale in Brooklyn. An indictment for conspiracy need do no more than this. *Hyde* v. *United States,* 225 U. S. 347; *Wallace* v. *United States,* 243 Fed. 300; certiorari denied, 245 U. S. 650; *Vane* v. *United States,* 254 Fed. 28.

It also states that the conspiracy was to sell " without having first registered with the Collector of Internal Revenue of this district." It is a reasonable inference that the sale was to be made within the United States and within the particular Internal Revenue district where the Grand Jury was sitting.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Thomas Agnello, Frank Agnello, Stephen Alba, Antonio Centorino and Thomas Pace were indicted in the District Court, Eastern District of New York, under § 37, Criminal Code, c. 321, 35 Stat. 1088, 1096, for a conspiracy to violate the Harrison Act, c. 1, 38 Stat. 785, as amended by

§§1006, 1007, 1008 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1130. The indictment charges that defendants conspired together to sell cocaine without having registered with the Collector of Internal Revenue and without having paid the prescribed tax. The overt acts charged are that defendants had cocaine in their possession, solicited the sale of it, met in the home of defendant Alba at 138 Union Street, Brooklyn, and made arrangements for the purpose of selling it, brought a large quantity of it to that place, and sold it in violation of the Act. The jury found defendants guilty. Each was sentenced to serve two years in the penitentiary and to pay a fine of $5,000. The Circuit Court of Appeals affirmed the judgment. 290 Fed. 671.

The evidence introduced by the Government was sufficient to warrant a finding of the following facts: Pasquale Napolitano and Nunzio Dispenza, employed by government revenue agents for that purpose, went to the home of Alba, Saturday, January 14, 1922, and there offered to buy narcotics from Alba and Centorino. Alba gave them some samples. They arranged to come again on Monday following. They returned at the time agreed. Six revenue agents and a city policeman followed them and remained on watch outside. Alba left the house and returned with Centorino. They did not then produce any drug. After discussion and the refusal of Napolitano and Dispenza to go to Centorino's house to get the drug, Centorino went to fetch it. He was followed by some of the agents. He first went to his own house, 172 Columbia Street; thence to 167 Columbia Street,—one part of which was a grocery store belonging to Pace and Thomas Agnello, and another part of which, connected with the grocery store, was the home of Frank Agnello and Pace. In a short time, Centorino, Pace and the Agnellos came out of the last mentioned place, and all went to Alba's house. Looking through the windows, those on watch saw

Frank Agnello produce a number of small packages for delivery to Napolitano and saw the latter hand over money to Alba. Upon the apparent consummation of the sale, the agents rushed in and arrested all the defendants. They found some of the packages on the table where the transaction took place and found others in the pockets of Frank Agnello. All contained cocaine. On searching Alba, they found the money given him by Napolitano.

And as a part of its case in chief, the Government offered testimony tending to show that, while some of the revenue agents were taking the defendants to the police station, the others and the city policeman went to the home of Centorino and searched it but did not find any narcotics; that they then went to 167 Columbia Street and searched it, and in Frank Agnello's bedroom found a can of cocaine which was produced and offered in evidence. The evidence was excluded on the ground that the search and seizure were made without a search warrant. In defense, Centorino and others gave testimony to the effect that the packages of cocaine which were brought to and seized in Alba's house at the time of the arrests had been furnished to Centorino by Dispenza to induce an apparent sale of cocaine to Napolitano, that is, to incite crime or acts having the appearance of crime, for the purpose of entrapping and punishing defendants. Centorino testified that, after leaving Napolitano and Dispenza with Alba at the latter's home, he went to his own house and got the packages of cocaine which had been given him by Dispenza and took them to 167 Columbia Street, and there gave them to Frank Agnello to be taken to Alba's house. Frank Agnello testified on direct examination that he received the packages from Centorino but that he did not know their contents, and that he would not have carried them if he had known that they contained cocaine or narcotics. On cross examination, he said that he had never seen narcotics. Then, notwithstanding objection

by defendants, the prosecuting attorney produced the can
of cocaine which the Government claimed was seized in
Agnello's bedroom and asked him whether he had ever
seen it.   He said he had not, and specifically stated he
had never seen it in his house.   In rebuttal, over objec-
tions of defendants, the Government was permitted to put
in the evidence of the search and seizure of the can of
cocaine in Frank Agnello's room, which theretofore had
been offered and excluded.

    The case involves the questions whether search of the
house of Frank Agnello and seizure of the cocaine there
found, without a search warrant, violated the Fourth
Amendment, and whether the admission of evidence of
such search and seizure violated the Fifth Amendment.
The Fourth Amendment is: "The right of the people to
be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be
violated, and no Warrants shall issue, but upon probable
cause, supported by Oath or affirmation, and particularly
describing the place to be searched, and the persons or
things to be seized."   The provision of the Fifth Amend-
ment invoked is this: "No person . . . shall be compelled
in any criminal case to be a witness against himself."

    The right without a search warrant contemporaneously
to search persons lawfully arrested while committing
crime and to search the place where the arrest is made in
order to find and seize things connected with the crime as
its fruits or as the means by which it was committed, as
well as weapons and other things to effect an escape from
custody, is not to be doubted.   See *Carroll* v. *United
States,* 267 U. S. 132, 158; *Weeks* v. *United States,* 232
U. S. 383, 392.   The legality of the arrests or of the
searches and seizures made at the home of Alba is not
questioned.   Such searches and seizures naturally and
usually appertain to and attend such arrests.   But the
right does not extend to other places.   Frank Agnello's

house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended and the defendants were under arrest and in custody elsewhere. That search cannot be sustained as an incident of the arrests. See *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 391; *People* v. *Conway,* 225 Mich. 152; *Gamble* v. *Keyes,* 35 S. D. 645, 650.

Under the Harrison Act (§ 8; § 1 as amended by § 1006) it is unlawful for any person who has not registered and paid a special tax, to have cocaine in his possession, and all unstamped packages of such drug found in his possession are subject to forfeiture. We assume, as contended by the Government, that defendants obtained from Frank Agnello's house the cocaine that was taken to Alba's house and there seized; that the can of cocaine which later was found in Agnello's house was unlawfully in his control and subject to seizure, and that it was a part of the cocaine which was the subject matter of the conspiracy.

The Government cites *Carroll* v. *United States, supra;* but it does not support the search and seizure complained of. That case involved the legality of a search of an automobile and the seizure of intoxicating liquors being transported therein in violation of the National Prohibition Act. The search and seizure were made by prohibition agents without a warrant. After reference to various acts of Congress relating to the seizure of contraband goods, the court said (p. 153): "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a

search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." It was held that, "The facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched." (p. 162.) And on that ground the court held the search and seizure without warrant justified.

While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein: *Boyd* v. *United States,* 116 U. S. 616, 624, *et seq.,* 630; *Weeks* v. *United States, supra,* 393; *Silverthorne Lumber Co.* v. *United States, supra,* 391; *Gouled* v. *United States,* 255 U. S. 298, 308. The protection of the Fourth Amendment extends to all equally,—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919, c. 85, Tit. II, § 25, 41 Stat. 305, 315, provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the priva-

cies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent or employee of the United States engaged in the enforcement of any law to search a private dwelling house without a warrant directing such search. Act of November 23, 1921, c. 134, § 6, 42 Stat. 222, 223. Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the constitution or laws of every State of the Union.* We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in § 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See *Entick* v. *Carrington,* 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See *Temperani* v. *United States,* 299 Fed. 365; *United States* v. *Rembert,* 284 Fed. 996, 1000; *Connelly* v. *United States,* 275 Fed. 509; *McClurg* v. *Brenton,* 123 Ia. 368, 372; *People* v. *Margolis,* 220 Mich. 431; *Childers* v. *Commonwealth,* 198 Ky. 848; *State* v. *Warfield,* 184 Wis. 56. The search of Frank Agnello's house and seizure of the can of cocaine violated the Fourth Amendment.

It is well settled that, when properly invoked, the Fifth Amendment protects every person from incrimination by

* See p. 1268, Index Digest of State Constitutions (prepared for New York State Constitutional Convention Commission, 1915); also § 8, c. 7, Consolidated Laws, New York, as amended by L. 1923, c. 80.

the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment. *Boyd v. United States, supra,* 630, *et seq.; Weeks* v. *United States, supra,* 398; *Silverthorne Lumber Co.* v. *United States, supra,* 391, 392; *Gouled* v. *United States, supra,* 306; *Amos* v. *United States,* 255 U. S. 313, 316. The Government contends that, even if the search and seizure were unlawful, the evidence was admissible because no application on behalf of defendant was made to the court for the return of the can of cocaine. The reason for such application, where required, is that the court will not pause in a criminal case to determine collateral issues as to how the evidence was obtained. See *Adams* v. *New York,* 192 U. S. 585, 594, affirming 176 N. Y. 351. But in this case, the facts disclosing that the search and seizure violated the Fourth Amendment were not in controversy. They were shown by the examination of the witness called to give the evidence. There was no search warrant; and from the first, the position of the Government has been that none was necessary. In substance, Frank Agnello testified that he never had possession of the can of cocaine and never saw it until it was produced in court. There is nothing to show that, in advance of its offer in evidence, he knew that the Government claimed it had searched his house and found cocaine there, or that the prosecutor intended to introduce evidence of any search or seizure. It would be unreasonable to hold that he was bound to apply for the return of an article which he maintained he never had. Where, by uncontroverted facts, it appears that a search and seizure were made in violation of the Fourth Amendment, there is no reason why one whose rights have been so violated and who is sought to be incriminated by evidence so obtained, may not invoke protection of the Fifth Amendment immediately and without any application for the return of the thing seized. "A rule of practice must not be allowed for any technical reason to prevail over

a constitutional right." *Gouled* v. *United States, supra,* 313. And the contention that the evidence of the search and seizure was admissible in rebuttal is without merit. In his direct examination, Agnello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search. As said in *Silverthorne Lumber Co.* v. *United States, supra,* 392, "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." The admission of evidence obtained by the search and seizure was error and prejudicial to the substantial rights of Frank Agnello. The judgment against him must be set aside and a new trial awarded.

But the judgment against the other defendants may stand. The introduction of the evidence of the search and seizure did not transgress their constitutional rights. And it was not prejudicial error against them. The possession by Frank Agnello of the can of cocaine which was seized tended to show guilty knowledge and criminal intent on his part; but it was not submitted as attributable to the other defendants. During the summing up of the case to the jury by the prosecuting attorney, the court distinctly indicated that the evidence was admissible only against Frank Agnello. The other defendants did not request any instruction to the jury in reference to the matter, and they do not contend that any erroneous instruction was given. *Isaacs* v. *United States,* 159 U. S. 487, 491.

The packages of cocaine seized at Alba's house were carried to that place by Frank Agnello. He did this at the instance of Centorino; and in his behalf it is claimed he acted innocently and without knowledge of the con-

tents of the package. The evidence of the search and seizure made in his house tended to show that he knew what he was doing and was a willing participant in the conspiracy charged. But so far as concerns the other defendants, it is immaterial whether he acted innocently and without knowledge of the contents of the package or knowingly to effect the object of the conspiracy. In either case, his act would be equally chargeable to his codefendants. They are not entitled to a new trial. See *Rossi* v. *United States,* 278 Fed. 349, 354; *Belfi* v. *United States,* 259 Fed. 822, 828; *Feder et al.* v. *United States,* 257 Fed. 694; *Browne* v. *United States,* 145 Fed. 1, 13; *United States* v. *Cohn,* 128 Fed. 615, 626.

*Judgment against Frank Agnello reversed; judgment against other defendants affirmed.*