## TOWN OF SURFSIDE v. EARL.

Circuit Court, Dade County, Criminal Appeal.

November 26, 1952.

James H. Ruby, Miami Beach, for appellant.

Frank J. Kelly, Miami, for appellee.

J. N. MORRIS, Circuit Judge.

Defendant was convicted under ordinance no. 212 of the town of Surfside which adopts the statutes of the state of Florida, the statute involved being section 849.25 F.S.A. pertaining to bookmaking. From the conviction defendant appealed.

Defendant assigned various grounds for appeal, nearly all of which are either immaterial or at most constituted harmless error. The basic question involved is—*Was the evidence obtained as a result of an illegal search and seizure?* Based on the record this court must reluctantly reverse the decision of the lower court.

In order to enable the courts to enforce the individual safeguards granted under our organic law the various law enforcement officers and agents and others who have a duty to gather and present evidence for use in the courts must do so in such a way as not to infringe upon the personal liberties granted to the individual— regardless of the apparent guilt of the accused. A leading case on this subject is Gildrie v. State (Fla.), 113 So. 704, wherein Justice Buford reversed a conviction by a lower court after thoroughly discussing section 22 of the Declaration of Rights of the Florida constitution. The learned justice recognized that the courts of the country are not in harmony on the question of the admissibility of evidence obtained by searching a dwelling house when the search is made without the consent of the occupant and without a valid search warrant authorizing such a search and the seizure of goods or other things constituting such evidence. Justice Buford quoted

from Agnello v. United States, 269 U.S. 20, 46 S. Ct. 4, 70 L.ed. 145, in which Justice Butler, speaking for the United States Supreme Court, said—

> The protection of the Fourth Amendment extends to all equally, to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. . . . Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. . . . Belief, however well-founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.

The appellee admits that no search warrants were ever issued and that the officers did not have a proper warrant for the arrest of the appellant. The only evidence along these lines is the testimony of the town chief of police that while standing on the outside he heard one of the defendants speaking over the telephone and apparently taking bets. This is clearly insufficient evidence to justify the actions taken by the arresting officers.

In a similar situation our Supreme Court in Kraemer v. State, 60 So. 2d 615, reversed a lower court conviction, Justice Hobson, speaking for the majority of the court, saying at page 616—

> Law enforcement officers should be selected with great care and we should see to it that they are trained and become throughly qualified as such. Numerous instances have come to our attention in which we were convinced that the officer or officers could easily have made a lawful search and seizure but failed to do so either because of a callous disregard of constitutional rights of their fellow citizens or a lack of proper training and instruction. Ofttimes it has appeared that our prosecuting officers could have been more thorough in presenting the state's case in a criminal action. All of which results in public indignation, largely directed at the courts and not always properly so directed.

In his well-worded opinion Justice Hobson clearly defined what constitutes a valid search at page 616—

> No law was violated by the appellants in the presence of the officers and they were not armed with a search warrant. A search must be lawful in toto and one that is unlawful ab initio is not made lawful by what is found in consequence thereof. See Cornelius on Search and Seizure, 2nd Ed., Sec. 31, page 86, and cases therein cited.
>
> > "If a seizure is based on a mere suspicion, and the facts do not justify an arrest, the subsequent discovery by an examination of the evidence secured by the seizure that the suspicion was well founded is not sufficient to make what was unlawful at its commencement a lawful search." Garske v. United States, 8 Cir., 1 F. 2d 620, 621.

"It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people. Neither is the discretion of the officer, however good and well-intentioned, a substitute in law for a search warrant issued by a proper magistrate." United States v. Slusser, D.C., 270 F. 818, 819.

We are not unmindful of the fact that many upright citizens are apparently righteously indignant when they feel that a criminal has evaded punishment for his transgression upon what they consider to be a legal technicality. These same citizens are strengthened in the oft-expressed lay view that "It is all law and no justice" and are at times hypercritical of the courts. It might be stated in all fairness that our courts in some instances may by strained or tenuous constructions have invited criticism of this character, which fact merely serves to demonstrate that judicial officers are after all only human. Upon sober reflection it should be obvious to everyone that *all* of us as citizens are responsible for the existence of the Fourth Amendment to the Federal Constitution, as well as Section 22 of the Florida Declaration of Rights. Moreover the protection afforded by the Fourth Amendment, supra, and Section 22 of our Declaration of Rights, as was said by Mr. Justice Butler of the United States Supreme Court in the case of Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4,6, 70 L.ed. 145, "* * * extends to all equally—to those justly suspected or accused, as well as to the innocent."

In the case at bar the arresting officers had ample opportunity to obtain search and seizure warrants—but failed to do so. I agree that the suspicions of the arresting officers were justified, but mere suspicion has always been held not to constitute "probable cause," and as was stated in DeLancy v. City of Miami (Fla.), 43 So. 2d 856 at page 857—"It is offtimes better that crimes should go unpunished than that citizens should be liable to have their premises invaded."

While I agree with many of the comments of the judge who tried the case (and who conducted a thorough and lengthy trial) I hold that there can be no deviation from a bulwark of our law in order to force a desired result. Reversible error was committed when the defendant's motion to suppress the evidence was denied and when the objections to the introduction of the exhibits presented by the town were overruled. The evidence so obtained should have been excluded and as there was no other evidence supporting the charge the judgment should be reversed.

It is therefore ordered that the judgment of conviction be and it is, reversed, and the appellant discharged. It is further ordered that the costs of these proceedings in the sum of $93 be taxed against appellee and paid to James H. Ruby, appellant's attorney.