GOVERNMENT OF GUAM, Appellee

v.

COLLVER, et al., Appellants

Criminal No. 16-A

District Court of Guam

Appellate Division

September 26, 1958

Counsel for Appellee:   LOUIS A. OTTO, JR., *Attorney General;*
                        LEON D. FLORES, *Island Attorney;*
                        RICHARD D. MAGEE, *Deputy Island
                        Attorney*

Counsel for Appellants: FINTON J. PHELAN, JR.

Before FURBER, *Chief Justice,* and TOOMIN, *Associate
Justice,* High Court of the Trust Territory of the Pacific
Islands and SHRIVER, *United States Judge,* District
Court of Guam

SHRIVER, *District Judge*

34

OPINION

This is an appeal from a conviction for gambling from the Island Court of Guam. We sit as an appellate court under the authority of Part I, Title I, Chapter II of the Guam code of Civil Procedure and Public Law 85–444, 85th Congress, approved June 4, 1958, 72 Stat. 179. The Trust Territory justices were duly assigned by the Chief Judge of the United States Court of Appeals for the Ninth Circuit under the authority vested in him by P.L. 85–444.

We deal with this appeal at some length because the question presented concerns the right of Guam residents to be free from unlawful arrest, searches and seizures. The gambling for small stakes is admitted and after the conviction the Island Court merely warned the appellants and levied court costs.

The time element is confused but the essential facts are that the Government of Guam owns apartments which are rented to its off-island employees for whom it provides housing. These apartments are located in the general area which contains the Guam Memorial Hospital, a general hospital maintained and operated by the Government of Guam. In the early morning hours of December 21, 1957 a nurse at the hospital directed another employee to call the police because it had been reported to her that calls for help were coming from the apartments. In due course this became garbled so when the two policemen arrived they were told to investigate a non-existent disturbance in the hospital parking lot. They heard loud talking coming from an apartment rented by one of the appellants in which he and five guests were engaged in playing small stake poker. One of the policemen drew near and heard the word "raise" and the sound of money. They reported this nefariousness to their headquarters, which report brought to the scene the police officer in charge of the vice squad. He listened and

satisfied himself that gambling was in progress. The apartment was located on the second floor of a multiple apartment dwelling. Although three police officers were then present, no arrests were made at that time, the reason being that it was necessary to organize a raid.

And then I went back and told the boys to stand by and they were going in to that apartment. On the second trip I took the boys up to the apartment and I am the first one to come into the premises, Tr. p. 31.

It took about an hour to organize the raid. The raiding officers approached the apartment and the raid leader testified that he looked in and saw the poker game in progress. He knocked on the door and immediately entered the unlocked room. Cards and money were taken as evidence. The players were taken to the police station, booked and released. The amount of money in front of the individual players varied from a few cents to a few dollars. The Government dignified these trivia by filing a formal information against them. They moved for suppression of the evidence and the trial court set the motion for hearing but the appellants offered no evidence to support it. The trial court properly overruled it. At the trial, however, numerous motions were made along the same line when it became clear as to what had happened.

The Government of Guam was created by the United States Congress through the Organic Act of Guam, 48 U.S.C.A. 1421 et seq. It was provided with a Bill of Rights which was taken from the United States Constitution. Section 1421b(c), corresponding to Amendment IV of the Constitution, provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant for arrest or search shall issue but upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched and the persons or things to be seized.

We know of no reason why the Guam Bill of Rights should not be construed, within the framework of applicable local laws, as providing the same restraints on Guam law enforcement officers, as those restraints which are imposed by similar provision in the Constitution on federal law enforcement officers. This view is further strengthened by the fact that in the Organic Act the Congress made the Federal Rules of Criminal Procedure applicable to the District Court of Guam, Section 1424(b), which rules in part implement the Constitutional restrictions. The District Court has jurisdiction over local felonies, and 1424(a)

... The jurisdiction of and the procedures in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam.

In its Summary of Findings and Recommendations of the Subcommittee on Improvements in the Federal Criminal Code, of the Committee on the Judiciary United States Senate (Report No. 1478, April 28, 1958) the subcommittee stated, pp. 13 and 14:

The subcommittee is not convinced that the extent and nature of other Federal crimes are such as presently to justify further liberalization of the rules governing search and seizure. In this connection we must say that the rules restricting the police do not exist simply to protect us against the inconvenience of police intrusion. The rules have a symbolic value of the highest importance. They affirm the dignity of the individual. Freedom from the sudden, unjustified "knock on the door" is a most precious liberty.

No search warrant was obtained or sought. The appellee claims that the seizure without a warrant was justified as incident to lawful arrests for a misdemeanor committed in the presence of the police, while the appellants' basic claim is that the arrests were illegal.

Under the Penal Code of Guam an arrest may be made by a peace officer without a warrant for a public offense committed or attempted in his presence.

836—ARREST BY PEACE OFFICERS. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

1. For a public offense committed or attempted in his presence.

2. When a person arrested has committed a public offense, although not in his presence.

3. When a public offense has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

4. On a charge made, upon a reasonable cause, of the commission of a public offense by the party arrested.

5. When there is a reasonable cause to believe that he has committed or is about to commit a public offense.

He may not make an arrest at night for a misdemeanor except when the offense is committed in his presence.

840—ARRESTS, WHEN MAY BE MADE. WITHOUT WARRANT, WHEN. If the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon the warrant or except when the offense is committed in the presence of the arresting officer.

He may break open the door or window of the house after having demanded admittance and explained the purpose for which admittance is desired.

844—ARRESTS, ENTRIES FOR. To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired. A peace officer who has witnessed the commission of a public offense may pursue the offender into any ship, building, or grounds.

The evidence in this case showed that no demand for admittance was made. The arresting officer knocked and entered through an unlocked door.

If the police raid had proceeded on the basis of the information in the possession of the officers immediately before the officer saw the poker game in process, it would have been illegal. In *McDonald v. United States*, 335 U.S. 451, the defendant was conducting a numbers operation in his room in a rooming house. He had been under police observation for about two months. Three officers surrounded the house and one entered by prying open a window in the landlady's room, after which he admitted the other officers. One of the officers stood on a chair and looked through a transom where he saw the defendant and evidence of the numbers game. Search was made as incident to the arrest. The Supreme Court held that the search was illegal without a warrant in that there was ample time to obtain a warrant even after the officer saw the offense being committed. The concurring opinion of Justice Jackson made a distinction between lawful and unlawful entry to the rooming house. He stated, p. 458.

> Doubtless a tenant's quarters in a rooming or apartment house are legally as well as practically exposed to lawful approach by a good many persons without his consent or control. Had the police been admitted as guests of another tenant or had the approaches been thrown open by an obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another's shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible.

There was no evidence in the present case that access to the apartment door involved any trespass.

■ The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was conducted, as well as weapons and other things to effect an escape from custody is not to be doubted, *Agnello v. United States*, 269 U.S. 20–30.

■ In spite of the disproportionate zeal of the Guam police, we are forced to the conclusion that the arrest was legal in this case. The trial court believed that the police officer had seen the gambling in process before making an entrance and that the offense was therefore committed in his presence. This was the first occasion when the evidence would have justified an arrest and seizure.

The convictions are affirmed.