UNITED STATES
v.
Robert Joyner WHITE.
Civ. A. No. 3760.

United States District Court
E. D. Virginia,
Richmond Division.
April 15, 1964.

C. Vernon Spratley, Jr., U. S. Atty., Plato Cacheris, Samuel W. Phillips, Asst. U. S. Attys., for the Government.

George F. Tidey, Richmond, Va., and Robert Joyner White, pro se, for petitioner.

BUTZNER, District Judge.

The petitioner, Robert Joyner White, moved pursuant to 28 U.S.C. § 2255 that the judgment of this Court convicting him of bank robbery and sentencing him to fifteen years confinement in the penitentiary be vacated. In his original petition he alleged that he was not present in the courtroom at the time the jury was empaneled but was being detained by the United States Marshal in a cell. The Court, in an order granting a plenary hearing, allowed the petitioner approximately sixty days to amend his motion to include all grounds which he had available at that time for relief. This order further provided that any ground which the petitioner had available but failed to present by amendment would be deemed waived. Sanders v. United States, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The petitioner filed an amended motion alleging as an additional ground that evidence obtained by an illegal search and seizure was introduced against him at his trial. Specifically he contends that the evidence was seized without a search warrant following an unlawful arrest in violation of his rights under the Fourth Amendment and the Self Incrimination Clause of the Fifth Amendment. He

asserts that the articles were seized from his apartment after he had been arrested and removed from the apartment in custody. This, he contends, also rendered the search illegal because it was not incident to his arrest.

The Government asserts that the petitioner was present when the jury was empaneled and that the search and seizure were incident to a lawful arrest.

The Court appointed a competent attorney to represent the petitioner and directed that the petitioner be transported from the United States Penitentiary in Atlanta to the Federal Reformatory in Petersburg approximately forty days before the plenary hearing to provide him ample time for conferences with his court-appointed attorney. It was suggested to the Court by the petitioner and his attorney that the petitioner was not satisfied with the manner in which his attorney proposed to represent him on the search and seizure issue. The Court, at a hearing in which both petitioner and his attorney appeared, concluded that the petitioner's criticism of the attorney was unjustified. Nevertheless, the Court granted the petitioner his request to appear pro se and relieved the court-appointed attorney from further responsibility in the case. Members of petitioner's family thereafter retained an attorney of petitioner's choice, who assisted him throughout the hearing, particularly on the issue pertaining to the jury.

The petitioner's motion is without merit.

The petitioner was arrested on April 30, 1959 on a charge of robbing the Lakeside Branch of the First Federal Savings and Loan Association of Richmond, Virginia. He pleaded not guilty, was tried before a jury and was convicted. He is presently serving the sentence of which he complains.

He appealed to the Court of Appeals for the Fourth Circuit, which affirmed his conviction. White v. United States, 279 F 2d 740 (4th Cir. 1960), cert. denied 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960).

On July 25, 1961 he filed a motion pursuant to Rule 33, requesting a new trial on the ground of newly discovered evidence. After a plenary hearing this Court denied the motion. An appeal filed by the petitioner was abandoned.

At the plenary hearing on the present motion the petitioner moved for production of all statements of Government witnesses pertaining to the subject matter of their direct testimony pursuant to 18 U.S.C. § 3500.

The Court, expressing some doubt about the applicability of 18 U.S.C. § 3500 to this civil proceeding, but without deciding the question or determining whether the motion should have been made pursuant to Rule 34 of the Federal Rules of Civil Procedure, directed the United States Attorney to produce the requested documents. The United States Attorney immediately produced for inspection by the Court and the petitioner all of the documents that he had in his possession. (Petitioner's Exhibits 5, 6, 7, 8). Thereafter the petitioner moved for the production of all papers in the possession of the Federal Bureau of Investigation pertaining to the testimony of the witnesses. This motion also was granted and within a reasonable time after the hearing the United States Attorney furnished the Court with the papers. The Court has examined these documents and finds nothing in them that was contradictory to the testimony of the witnesses or supports the position of the petitioner on this motion. The papers furnished by the United States Attorney contain some information not germane to this proceeding. They have been sealed and are made a part of the record in order that they may be available for appellate review.

### Findings of Fact

1. The petitioner was present in the courtroom throughout the time that the jury was called, sworn and examined on

the voir dire, empaneled and sworn to try his case.

2. At the petitioner's trial the Government introduced into evidence articles which agents of the Federal Bureau of Investigation had obtained from petitioner's apartment on April 30, 1959. The agents did not have a search warrant. The search and seizure were incident to the petitioner's arrest.

3. The Lakeside Branch of the First Federal Savings and Loan Association was robbed on the morning of April 28, 1959.

4. On April 30, 1959, John N. Morgan, a special agent of the Federal Bureau of Investigation, swore out a complaint before the United States Commissioner, averring: "The statements herein alleged are based upon information furnished to the undersigned Federal Bureau of Investigation Agent in conversations and written statements furnished by Maurice Lapides of Richmond, Virginia, who stated the defendant admitted to him the facts set forth in this complaint". Upon this complaint the United States Commissioner issued a warrant of arrest. John N. Morgan did not testify in these proceedings.

5. Armed with this warrant special agents of the Federal Bureau of Investigation John A. Roach and Robert E. Barrett arrested the petitioner at his apartment in Richmond, Virginia at approximately 1:30 P.M. April 30, 1959. The agents were accompanied by Special Agent Claude A. Bass, who remained in the hall outside the apartment until the arresting officers and the petitioner prepared to leave. The apartment in which the petitioner was arrested was approximately fifteen feet square. It consisted of one room with bath. Incident to the arrest Mr. Barrett conducted a search of the apartment in which the arrest was made. He seized among other articles a .45 caliber automatic pistol, a foreign .32 caliber pistol, several pairs of shoes and several sport shirts. As Mr. Roach and Mr. Barrett left the apartment with the petitioner in custody, Mr. Bass acting on instructions from Mr. Roach, immediately entered the apartment, took possession of these articles and carried them to the office of the Federal Bureau of Investigation. Mr. Bass did not take the articles later in the afternoon as the petitioner contends. Mr. Bass' actions constituted a part of the search and seizure at the time of and incident to the arrest.

6. Mr. Roach, the arresting officer, was the Special Agent in Charge of the Richmond office of the Federal Bureau of Investigation in the Spring of 1959. He supervised the investigation of the robbery of the Lakeside Branch of the First Federal Savings and Loan Association.

7. Prior to the time Mr. Roach arrested the petitioner he had the following information:

a. On February 19, 1959 Maurice Lapides informed an agent of the Federal Bureau of Investigation that the petitioner had contacted him concerning participation in a bank robbery. He stated that the petitioner had taken him to three banks which he considered good prospects and described in detail certain aspects of a plan by which he proposed to rob one of these banks. The petitioner had taken Lapides to his apartment, where he exhibited three guns and two rubber masks which he planned to use during the crime. The petitioner told Lapides that he had reported to the Richmond Police Department the theft of a .45 caliber automatic from his car so if the gun were lost during the robbery the petitioner would have an excuse.

b. Lapides' information was corroborated in part by the Richmond Police Department, who advised that they had received a report from petitioner that a .45 caliber automatic had been stolen from his car on the night of January 29, 1959.

c. On March 2, 1959 Mr. Roach had observed the petitioner sitting in his car in front of a branch of the Bank of Virginia on Broad Street. The petitioner remained in the vicinity, looking into

the bank for about ten minutes, then drove around to the side of the bank where he remained for about five minutes.

d. Witnesses at the scene of the robbery on April 28, 1959 described the robber as a man between thirty and thirty-five years of age, of slender build, with sandy colored hair, who wore a rubber mask and carried a .45 caliber automatic. The description resembled the petitioner.

e. Lapides returned to the office of the Federal Bureau of Investigation on April 29, 1959 and stated that the petitioner admitted committing the bank robbery the previous day. The petitioner told Lapides that he entered the bank at night by breaking a window in the back of the building, that he smoked several cigarettes and drank a coca cola while waiting for the bank to open. The petitioner described a combination heater and air conditioner located in the utility room where he hid.

f. Lapides' statement was corroborated in part by an examination of the bank which revealed that a back window had been broken. Several cigarette butts were found in the utility room. The room contained a combination air conditioner and heater.

g. During the investigation of the robbery an old Studebaker was found on a street near the bank. It was owned by a man named McCart.

h. McCart was interviewed by agents of the Federal Bureau of Investigation. He admitted that he had been with the petitioner in the latter's apartment on the night of April 27, 1959. They had awakened early the next morning and departed in petitioner's car which McCart was driving. The petitioner informed McCart that he intended to steal a car. The petitioner left his car and in a short time drove by McCart in a 1958 black and white Ford Skyliner. McCart followed to a place where the petitioner left the Ford. The petitioner and McCart returned to the apartment in petitioner's car. There they picked up McCart's Studebaker. With both cars in use, McCart following the petitioner, they drove some distance and parked. The petitioner opened a suitcase which was in the back seat of his car and removed a .45 caliber pistol, a shoulder holster and a shopping bag. He then gave McCart $2.00 for taxi fare home. McCart caught a Yellow Cab at the Richfield gas station on Chamberlyn Avenue and arrived home at approximately 6:00 A.M. The fare was $1.95.

i. McCart was corroborated, in part, by the Yellow Cab Company whose records disclosed that a taxi had picked up a fare in the vicinity of Azalea Avenue and Chamberlyn Avenue at 5:10 A.M., and had taken the passenger to Stop 15 on the Petersburg Turnpike. The fare was $1.95.

j. McCart's information was also partially corroborated by the records of the Richmond Police Department which showed that a Mrs. Pfeffer had reported that her 1958 black and white Ford Skyliner was stolen from Park Avenue during the night of April 27–28, 1959. The car was found on April 29, 1959 parked near a restaurant on Route 1.

k. On April 28, 1959 the agents of the Federal Bureau of Investigation interviewed the petitioner concerning his activities on the night of April 27, 1959. He first said he was drinking and did not recall much of what happened. He later stated he was with McCart. He said they ended up at his apartment around 4:00 A.M., and that McCart was so drunk that petitioner drove him home. At this interview the petitioner granted the agents permission to search his apartment, studio and the home of his aunts. The only article seized was a jacket which the petitioner willingly gave to the agents.

8. Petitioner did not move prior to or at his trial, pursuant to Rule 41, Federal Rules of Criminal Procedure, for the suppression of the evidence seized in his apartment.

9. The appeal of petitioner's conviction is reported in White v. United States,

279 F.2d 740 (4th Cir. 1960). In the petitioner's brief on this appeal filed by the attorney who had been retained to represent petitioner in his trial and to prosecute his appeal, the following statement appears on page 4: "On April 30, 1959, the appellant was arrested and certain items of clothing and personal belongings were voluntarily given to the arresting authorities for examination, some of which were introduced as evidence in his trial." Apparently this statement was the basis of the narration of facts which appears in White v. United States, supra, at 279 F.2d 743.

### Conclusions of Law

■ 1. It is well settled that a defendant has a constitutional right to be present at every stage of the trial including the empaneling of the jury. Fed. R.Crim.P. 43. The evidence having shown that the petitioner was present during this stage of the trial, the Court concludes that his rights were not violated.

■ 2. The Government contends that the petitioner can not raise the legality of the search and seizure by a motion pursuant to 28 U.S.C. § 2255. In support of this contention the Government cites numerous cases. The Court is of the opinion that in this Circuit the issue can be raised by a motion under this statute. United States v. Sutton, 321 F.2d 221 (4th Cir. 1963).

■ 3. The petitioner's apartment could not lawfully be searched without a search warrant except as an incident to a lawful arrest. Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

■ 4. The arresting officers had secured an arrest warrant. John N. Morgan, the Special Agent of the Federal Bureau of Investigation who made the complaint upon which the warrant was issued, did not testify in this proceeding. The Court does not pass upon the sufficiency of this warrant. The legality of the arrest, therefore, must be determined as though no warrant were issued.

5. The crime for which the petitioner was arrested is a felony. 18 U.S.C. § 2113.

■ 6. An officer may arrest for a felony without a warrant when he has probable cause to believe that the person who is to be arrested has committed a felony. In Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed. 2d 327 (1959) the Court said:

> " * * * Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

■ 7. The Court concludes that the arrest of the petitioner by the Special Agents of the Federal Bureau of Investigation was lawful. The agents had probable cause to make the arrest.

■ 8. It is well settled that a search and seizure incident to a lawful arrest must be substantially contemporaneous with the arrest and that it must be confined to the immediate vicinity of the arrest. Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The Court concludes that the search and seizure complied with these constitutional requirements.

■ 9. The introduction in evidence of the articles obtained by the search and seizure did not violate the petitioner's constitutional rights.

10. The petitioner's motion is without merit and is denied.