## Commonwealth v. Montrell

*Stanley Schwartz*, Assistant District Attorney, for Commonwealth.

*Herman Bloom*, for defendant.

McDEVITT, P. J., June 2, 1966.—On December 1, 1965, defendant, Roy Montrell, reported that his apartment had been entered and that he had been robbed. Officer Shiliro testified that in response to information received by radio, he proceeded to the building where defendant resided and was taken to defendant's apartment by the building superintendent. After knocking, defendant invited the police to enter his apartment.

While speaking to defendant to obtain information concerning the alleged robbery, the officer observed an eyedropper and needle on the floor, partially under a dresser, but in full view. In looking about the apartment, including the bathroom, Shiliro and his fellow officers observed a burned teaspoon and a packet of white powder by the sink. The officers confronted defendant with this paraphernalia, which in their experience signified the illegal use of narcotics. He, defendant, admitted that the paraphernalia belonged to him.

Based upon what they observed and defendant's admission, the police took defendant in custody and removed him to the station house.

Defendant now contends that the evidence, here the needle, eyedropper, packet of powder and burned spoon, were obtained as the result of an unlawful search and seizure. With that contention, this court does not agree.

Reliance is placed upon the cases of Jones v. United States, 357 U. S. 493 (1958), and Agnello v. United States, 269 U. S. 20 (1925). In each of these cases, Federal officers entered a private dwelling with the intent to search for evidence of crime believed to have been committed by defendant. In neither case were the officers armed with a valid search and seizure warrant; nor was the search incident to a valid arrest. In that setting, the Supreme Court held that "such searches are held unlawful notwithstanding facts unquestion-

ably showing probable cause": Agnello v. United States, supra, at page 33. And in Jones, the Supreme Court, 357 U. S. at page 497, said: "It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant". With these statements of the law, we cannot disagree; however, they have no application to the matter before the court.

The situation in this case is strikingly different. In essence, the police officers were in a position where they observed the commission of a criminal act in their presence. Both the use and possession of narcotics are criminal acts, the former a misdemeanor and the latter a felony. See Act of September 26, 1961, P. L. 1664, sec. 20; Act of August 24, 1963, P. L. 1147, secs. 1 and 2, 35 PS §780-20(a) and (c). Under the circumstances, it would appear clear that the procedure followed was proper. The officers were confronted with the situation where, having been summoned to investigate an unrelated crime, they could not but observe the evidence that another crime was being or had been committed by the very person by whom they had been called. "A police officer may, without a warrant, arrest a person for a felony if the person has committed a felony in the officer's presence, if the person is known to have committed a felony, although not in the officer's presence, if the officer knows that a felony has been committed and has reasonable grounds to believe that such person has committed it, or if the officer has reasonable grounds to believe both that a felony has been committed and that such person is the offender": 3 P. L. Encyc., Arrest, §4. An officer may also arrest, without a warrant, any person who commits a misdemeanor in his presence: ibid. Defendant contends, in effect, that the officers, upon observing the evidence of the commission of crime open to their view, should have withdrawn from the premises, secured an arrest and search

warrant, and returned to the premises. That might be so if all that the officers observed created merely a suspicion that a crime was being or had been committed, or if they had entered the premises without a search warrant but with the intent to search for the evidence or fruits of a crime, without invitation: Cf. Ker v. California, 374 U. S. 23 (1963).

Defendant next attempts to argue that the situation here is the same as that found to exist in United States v. Royster, 204 F. Supp. 760 (N. D. Ohio 1961). This contention is also without merit. In Royster, the officers entered defendant's home and asked for his identification. Defendant gave the officers his wallet and asked them to take out his identification. The officers went further, and removed some counterfeit bills from a closed compartment of defendant's wallet. It was in this setting that the district court held the officer could not rely upon the consent of defendant to justify the search, since the search went beyond the consent given.

Of significance is the fact that, in the instant case, the evidence was in the open for the officers to see upon entry. There certainly can be no doubt of the officers' lawful entry. Defendant not only consented to their entry and examination of his apartment; he in fact, requested that the investigation and examination occur.

True, he did not admit these officers for the purpose of finding evidence which would incriminate him, defendant, of crime. However, application of the principle suggested by defendant is in disregard of the law. Such a principle would make mockery of law and justice. All that any person need do thereafter is to call the police and report the commission of some other offense, laying in plain view all the evidence and paraphernalia of the crime which he had committed. Upon entry to his home, any police officer, no matter how well versed in the law, would, upon viewing the fruits of

the crime, make an arrest immediately, for to do otherwise would be in breach of the officers' sworn duty to uphold the law.

There is nothing in the matter before the court to justify the conclusion that the police went beyond the limits of the consent given. The consent encompassed whatever routine investigation and examination of the premises and the complaining parties which normally would have occurred in seeking to solve the reported robbery. Most assuredly, routine investigative procedures would encompass at least a visual examination of the premises. And if, as here, that visual examination disclosed that the occupant of the premises was himself committing a crime, he cannot now complain that the consent was limited solely to the discovery of evidence of the crime which he complains was committed against his person or property.

In both reason and law, defendant's position must be rejected. This court recognizes the necessity of protecting the rights and privileges of the individual. However, Constitutional protections afforded the individual should not be extended to the point of absurdity.

### ORDER

Now, June 2, 1966, defendant's application to suppress evidence is denied.