**UNITED STATES of America,**
**Plaintiff,**

v.

**William C. WOLK et al., Defendants.**

**No. 4–71 Cr. 155.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 13, 1972.

Robert G. Renner, U. S. Atty., by Thorwald H. Anderson, Asst. U. S. Atty., appeared for plaintiff.

Keith D. Kennedy, St. Louis Park, Minn., appeared for defendant Harry Arthur Finkelstein.

NEVILLE, District Judge.

Defendant Harry A. Finkelstein, one of 17 persons jointly indicted for engaging in a claimed illegal gambling business in violation of 18 U.S.C. § 1955, brings this motion to suppress certain evidence seized in the apartment where he resided at the time of his arrest. It is undisputed that on June 21, 1971 three special agents of the FBI came to defendant's apartment where he was alone, rang the bell, identified themselves, were admitted to the apartment and almost immediately advised defendant that he was under arrest. The arrest was made pursuant to a warrant which was exhibited and no challenge is made concerning the legality or validity of the arrest. One of the arresting FBI officers testified that where an arrestee has no history of violence and none is expected, it is the FBI policy that he is permitted, under surveillance, time to make the phone calls, to change clothes or get dressed, to close up his home, etc.

In accordance with this practice, defendant proceeded down a hallway within his apartment to the kitchen, a distance of some 15 to 25 feet followed by the agents. As he passed a small table proximate to the kitchen area, he picked up a number of sheets of paper therefrom and, holding them before him, proceeded toward a wastebasket or like receptable as though to hide, conceal or destroy them. The agent testified he thereupon seized the group of papers from defendant's hands (Govt.'s Ex. 1) and shortly picked up the remainder of the papers from the table (Govt.'s Ex. 2). Defendant at the time was but two feet more or less from the table. The agent had obtained no search warrant, and testified that the seized papers appear to be the writings of a bookmaker.

Defendant was sworn and testified at least partially to the contrary. He stated the agents followed him down the hallway of his apartment to the kitchen area but he denies that he ever had any of the papers in his hands or that he made any gesture to destroy, hide or secrete them. He states he walked past the table and took a chair in the farther end of the kitchen while the agents sat in other chairs nearby.

Both the defendant and the Government rely on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Defendant claims that the seizure was not valid; that the arrest took place at or near the apartment door, 15 to 25 feet from the location of the papers; that the arresting officers, though having a right to search his person and to seize items found on his person, had no right to seize these papers since they were not at the time in defendant's control; nor were the items seized weapons, firearms or other dangerous instrumentalities. The government relies principally on the language in Chimel, quoting Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) that a seizure is proper at the time of arrest to prevent the defendant's use of weapons or the destruction of evidence. It points out that the instant case differs from Chimel

where defendant was arrested at home and a warrantless search was made of an entire three-bedroom house including attic and garage. Here the apartment was not searched at all but evidence merely seized to preserve it and to prevent its destruction. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). This seizure was not "remote in time or place from the arrest" as in *Preston supra.*

 Had the agents immediately seized defendant at the apartment door and transported him as he was to jail or elsewhere, the question involved in this case would not have arisen. Conversely, however, the agents extended defendant the usual courtesy above described and then it was that the seizure became necessary to prevent destruction of possible evidence. To this court that does not appear to be a violation of defendant's Fourth Amendment rights. Insofar as there is a discrepancy between the testimony of the FBI agent and defendant, the court is inclined to believe the agent and accordingly finds that defendant did in fact attempt to destroy or hide the papers seized. Apart from this finding, however, and even if as defendant claims he made no gesture toward destruction or concealment, it is undisputed that the papers seized were on the tabletop within two feet more or less of defendant as he walked to the kitchen area and close to him as he stopped there. They were thus within clear view, reach and control of defendant. Imminent possibility of destruction of records in the immediate area of an arrestee is grounds for a warrantless seizure and in this court's opinion this will continue where necessary after the immediate moment of arrest. As stated in *Chimel,* 395 U.S. at p. 763, 89 S.Ct. at p. 2040:

". . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or *destructible evidence.*" [Emphasis added]

The court attaches no particular significance to the fact that a later submitted four page inventory of articles taken from defendant's person and clothing at the time of arrest does not contain a listing of these particular items, Govt.'s Ex. 1 and 2. The view taken by the court renders unnecessary a discussion of the government's claim that defendant's motion is not timely brought.

A separate order has been entered.