Alfred PAGE, Appellant,

v.

UNITED STATES of America, Appellee (two cases).

Nos. 15195, 15196.

United States Court of Appeals Eighth Circuit.

Oct. 12, 1960.

Sidney M. Glazer, St. Louis, Mo., for appellant; Morris A. Shenker, St. Louis, Mo., on the brief.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee. Wm. H. Webster, U. S. Atty., St. Louis, Mo., on the brief.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

These are appeals from two judgments of conviction entered July 30, 1954, on the verdicts of a jury finding the defendant, Page, guilty under two counts of a three-count indictment charging violations of the narcotic laws of the United States, and guilty under a second indictment charging him with possession of an unregistered sawed-off, twelve gauge, double barreled shotgun, with barrels less than eighteen inches in length; this in violation of § 3261(b) of 26 U.S.C. The indictments had been consolidated for trial. Page was sentenced to five years' imprisonment under the first indictment and to five years' imprisonment under the second indictment, the sentences to be served consecutively. Notices of appeal were filed by Page, but he was denied leave to proceed on appeal *in forma pauperis.*

The Supreme Court on March 23, 1959, directed "reconsideration of petitioner's [Page's] right to appeal *in forma pauperis* from his 1954 conviction on the basis of a transcript of the record at the trial." 359 U.S. 116, 79 S.Ct. 730, 3 L.Ed.2d 674. In compliance with the mandate of that Court, we directed the United States Attorney to procure, at Government expense, a transcript of the evidence and proceedings at the trial of Page, and to serve a copy upon counsel whom we appointed to represent him in connection with his motion for leave to prosecute his appeals as a poor person despite the certificate of the trial judge that they were not taken in good faith. We requested counsel, so appointed, to file with this Court a copy of the trial record and a report pointing out in what respects the trial judge, who had denied

Page leave to appeal as a poor person, erred in certifying that the appeals were not taken in good faith. The history of Page's case and the order of this Court appear in 268 F.2d 251.

Mr. Morris A. Shenker, one of court-appointed counsel for Page, in the report and in his supporting brief raises three points which he believes are not frivolous, namely:

1. The sentence under the second indictment (possession of an unregistered sawed-off shotgun) is illegal because the statute upon which it was based (§ 3261 (b) of the Internal Revenue Code of 1939) is unconstitutional, since compliance with it compels self-incrimination, in contravention of the Fifth Amendment.

2. The trial court erred in denying Page's pretrial motion to suppress the shotgun as evidence because it was procured as the result of an unreasonable search and seizure.

3. The instructions of the court to the jury were inaccurate and inadequate.

This Court on December 23, 1959 (272 F.2d 816), granted Page leave to proceed on appeal *in forma pauperis* and appointed Mr. Shenker to brief and argue the cases on final submission. We are indebted to him for his assistance in bringing to our attention, by brief and argument, everything which could possibly be of help to Page on these appeals.

■ The assertion that the court erred in its instructions with respect to the charges of violations of the narcotic laws contained in the first indictment, we think comes too late and is without substantial merit. The defendant was represented at the trial by competent counsel of his own choosing. At the conclusion of the charge to the jury, the trial judge asked counsel if there were any suggestions for additions or any objections to the charge. Counsel for Page stated he had no suggestions for further instructions and no exceptions. Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C., provides that: "No party may assign as error any portion of the charge

or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." In view of this Rule, we could not now justify a reversal for a defect, if one existed, in the charge of the court. The fact that what counsel for Page said about having no objections to the court's instructions was said in the presence of the jury is of no consequence. Surely a trial judge, before furnishing an attorney an opportunity to make objection out of the hearing of the jury, does not err in asking if the attorney has any objections to make.

Mr. Shenker, in his brief and argument, has urged us to declare the statute [1] under which Page was indicted and convicted for possessing the unregistered sawed-off shotgun, unconstitutional as requiring one in his situation, by registering the gun, to incriminate himself.

 The constitutionality of the statute upon which the charge against Page of possessing an unregistered firearm was based was not questioned at the trial. Under Rule 52(b) of the Federal Rules of Criminal Procedure, "Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the court." It has always been the rule that, in order to prevent a miscarriage of justice, a federal appellate court, in the exercise of a sound discretion, may notice plain and vital errors occurring during the trial of a criminal case, although not preserved for review by objection or exception. Wiborg v. United States, 163 U.S. 632, 658, 16 S.Ct. 1127, 1197, 41 L.Ed. 289; Crawford v. United States, 212 U.S. 183, 194, 29 S.Ct. 260, 53 L.Ed. 465; Whitney v. People of State of California, 274 U.S. 357, 380, 47 S.Ct. 641, 71 L.Ed. 1095; Ayers v. United States, 8 Cir., 58 F.2d 607, 608–609. But the power of a reviewing court to consider a question first

presented on appeal is an exception to the rule that such a court will not consider errors not objected to at the trial. Lamento v. United States, 8 Cir., 4 F. 2d 901, 904. A trial judge ordinarily should not be held to have erred in not deciding correctly a question that he was never asked to decide.

In Yakus v. United States, 321 U.S. 414, 444–445, 64 S.Ct. 660, 677, 88 L.Ed. 834, the Court said:

"No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. O'Neil v. State of Vermont, 144 U.S. 323, 331, 12 S.Ct. 693, 696, 36 L.Ed. 450; Barbour v. State of Georgia, 249 U. S. 454, 460, 39 S.Ct. 316, 317, 63 L. Ed. 704; Whitney v. People of State of California, 274 U.S. 357, 360, 362, 380, 47 S.Ct. 641, 642, 643, 650, 71 L.Ed. 1095. Courts may for that reason refuse to consider a constitutional objection even though a like objection had previously been sustained in a case in which it was properly taken. Seaboard Air Line Ry. Co. v. Watson, 287 U.S. 86, 53 S.Ct. 32, 77 L.Ed. 180. While this Court in its discretion sometimes departs from this rule in cases from lower federal courts, it invariably adheres to it in cases from state courts, see Brandeis, J. concurring in Whitney v. People of State of California, supra, 274 U.S. at page 380, 47 S.Ct. at page 650, 71 L.Ed. 1095, and it could hardly be maintained that it is beyond legislative power to make the rule inflexible in all cases. Compare Woolsey v. Best, 299 U.S. 1, 57 S.Ct. 2, 81 L.Ed. 3, with Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717."

 We are convinced that the exercise of a sound judicial discretion re-

---

1. Section 3261(b) of the Int.Rev.Code of 1939; § 3261(b), 26 U.S.C., (which became § 5841 of the Int.Rev.Code of 1954, 26 U.S.C.).

quires that, in the instant cases, we decline to pass upon the constitutionality of the National Firearms Act requiring the registration by possessors, such as Page, of sawed-off shotguns—useless for any lawful purpose. The constitutional question has been ably briefed. If the Act, in so far as applicable here, is to be declared invalid, that should, we think, be done by the Supreme Court on certiorari—so that the declaration will have nation-wide effect and acceptance. The Act in question has thus far stood up well under attack (United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206; Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772) and is certainly not so plainly unconstitutional (United States v. Cumbee, D.C.Minn., 84 F.Supp. 390, 392) that the failure of the trial court or this Court to hold it so can be regarded as a plain error or a culpable neglect of judicial duty.

When this Court granted leave to Page to proceed with his appeals as a poor person, it was thought that the question whether evidence procured through an illegal search by state officers, without federal participation, was admissible in a criminal trial in a federal court, was present in the case involving the unregistered sawed-off shotgun. The issue was raised in Page's pretrial motion, filed on June 22, 1954, under Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress the shotgun as evidence. That motion read as follows:

"Comes now defendant herein and respectfully states to the Court that on or about the 11th day of April, 1954, at 4864 St. Louis Avenue in the City of St. Louis, Missouri, members of the Metropolitan Police Department of said City of St. Louis, Missouri, whose names are to said defendant unknown, unlawfully and

without search warrants entered the building known as 4864 St. Louis Avenue and without search warrants or other legal right searched said premises, and therefrom took a shot gun with a barrel less than eighteen inches (18″); that the United States District Attorney proposes and intends to offer in evidence said shot gun so illegally and without warrant by them obtained as aforesaid.

"Defendant states that the search and seizure by the Metropolitan Police Officers aforesaid as aforesaid was in violation of the Fourth (4th) Amendment of the Constitution of the United States and therefore prays the court that said shot gun be suppressed as evidence against the defendant in the above entitled cause."

His showing on the motion, which was heard on June 25, 1954, was that Police Officers of the City of St. Louis, Missouri, had found the gun during the course of an unreasonable search, without any federal participation. The court denied the motion to suppress.[2]

At the trial, which was held on July 1, 1954, the evidence of the Government disclosed that in the evening of February 10, 1954, two informers—Taylor and Harris—at the direction of federal narcotic agents, went to 4864 St. Louis Avenue, a dwelling house, where Page was living; that he let them in; that they went first to his bedroom and then to the kitchen; that Taylor asked Page if he could get him some narcotics; that Page said he would see what he could do; that he left the kitchen for a few minutes and returned with a bag of white powder, which he proceeded to put up into capsules; that he sold Taylor 50 capsules; that Taylor paid him with bills the serial numbers of which had

2. Compare the rulings of this Court in Jones v. United States, 8 Cir., 217 F. 2d 381, 382–383, and Costello v. United States, 8 Cir., 255 F.2d 389, 394–395. In Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 and Rios v. United States, 364 U.S. 253, 80 S.Ct.

1431, 4 L.Ed.2d 1688, opinions filed June 27, 1960, the Supreme Court decided that the fruits of an unreasonable search by state officers alone are inadmissible in evidence over timely objection in federal court.

been listed and which bills had been furnished Taylor by the agents; that the capsules contained heroin; that, after leaving the house, Taylor turned over to Fred T. Dick, one of the federal narcotic agents, an envelope containing the 50 capsules of heroin; that Dick was accompanied by two other narcotic agents—Tollinger and Witt—and by detectives Bloss and Schmidt of the St. Louis Police Department.

The Government's evidence also shows that while the informers were in the kitchen with Page on February 10, 1954, the door bell rang; that Page went into the bathroom, carrying a sawed-off shotgun, and looked out of the window; that one of the informers had seen Page with the gun in his possession in the house on numerous occasions. The evidence further showed that on February 11, 1954, —the day following the sale of narcotics by Page to Taylor—about 5:30 a. m., federal narcotic agents Dick, Witt and Tollinger, accompanied by detectives Bloss, Schmidt and Rickmann of the St. Louis Police Department, placed the Page house under surveillance; that at 7:30 a. m. a taxicab pulled up in front of the house; that the horn on the taxi was blown; that Page stuck his head out of the front door, went back into the house, and shortly thereafter left it and walked from the porch to the taxicab and started to enter it; that agent Dick approached Page and identified himself as a federal agent; that the defendant ran from Dick toward the house; that the agent caught him on the steps of the house; that he was placed under arrest; that, at the direction of the agent, Page raised his arms and dropped from his left hand a small plastic container with three capsules of heroin in it; that agent Dick searched Page;

that he found in his wallet one of the listed $5.00 bills which had been furnished Taylor the evening before; that agent Dick and detective Bloss then entered the house, the door of which was open; that they searched the second floor (which one of the women in the house said Page occupied), and found on the top of a kitchen cabinet the sawed-off, unregistered, double-barreled, fully loaded, twelve gauge shotgun in suit that a "few more revolvers" were found; and that the firearms were taken to the Police Station.

At the trial the shotgun was offered in evidence. No objection to its admission was interposed by or on behalf of the defendant. No motion was made to strike the gun from the evidence. It was apparently assumed to be competent and relevant evidence obtained by a federal officer who had probable cause for arresting the defendant, who did arrest him, and whose search of the premises in which he conducted his illicit business and from which he had just emerged with contraband narcotics in his hand, was lawful as incident to his arrest.[3]

At the close of the Government's evidence, the defendant made a motion for a directed verdict of acquittal, reading in part as follows:

"The defendant asks that the judgment for acquittal be made and entered herein for the reason that the government has failed to establish all charges by the government made and all offenses alleged in both these two indictments 27799 and 27800. That the government has in neither of the charges presented testimony sufficient to constitute a prima facie crime as alleged."

3. See and compare: Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 198–199, 48 S.Ct. 74, 72 L.Ed. 231; Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Rabinowitz, 339 U.S. 56, 62–63, 70 S.Ct. 430, 94 L.Ed. 653; Draper v. United States, 10 Cir., 248 F.2d 295, 298–299, affirmed in Draper v. United States, 358 U.S. 307, 310–314, 79 S.Ct. 329, 3 L.Ed. 2d 327; Thomas v. United States, 8 Cir., 281 F.2d 132, 136.

The motion was overruled. It was renewed at the close of all the evidence, and again overruled.

The doubtful and troublesome questions in this case are (1) whether the search of the defendant's living quarters was reasonable as being incident to his valid arrest just outside the door of the house, and (2) whether, if unreasonable, the trial court was required either to exclude the gun from evidence in the absence of any objection at the trial to its being received, or to direct a verdict of acquittal on the ground of the inadequacy of the evidence to sustain a conviction on the shotgun indictment.

 My associates are of the opinion that the search was unreasonable as being beyond the bounds of what properly might be considered as incidental to the defendant's arrest outside the dwelling. They are also of the view that, the defendant having made a pretrial motion to suppress the gun as evidence and having at the close of the case moved for a directed verdict of acquittal on the ground of the inadequacy of the evidence, the trial court should have rejected the offer of the gun in evidence or should have treated it as inadequate evidence to sustain the defendant's conviction under the shotgun indictment.

I am unable to agree that the trial judge committed reversible error in receiving the shotgun in evidence or in denying the defendant's motion for a directed verdict of acquittal under the shotgun indictment. Had the true factual situation leading to the search for and seizure of the shotgun been shown at the hearing on the motion to suppress the gun as evidence, I think it would probably not have been necessary for the defendant, at the trial, to again object to the admission of the gun.[4] But when the trial evidence relative to the search presented a materially different factual situation from that upon which the motion to suppress was based and presented a different ground than that upon which the trial judge had acted in denying the motion, then I think, to preserve the question of the legality of the search for review, it became incumbent upon the defendant to object at the trial to the admission of the gun into evidence and to state specifically the grounds of his objection.

The judgment and sentence imposed upon Page which is based upon his conviction under the indictment charging violations of the narcotic laws of the United States is affirmed. A majority of this Court being of the opinion that the judgment and sentence imposed under the indictment charging Page with possessing an unregistered sawed-off shotgun must be reversed.

It is so ordered.

4. In Lawn v. United States, 355 U.S. 339, 353, 78 S.Ct. 311, 319, 2 L.Ed.2d 321, the Supreme Court said:
"* * * It is quite true generally that the overruling of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at the trial. Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 119, 73 L.Ed. 275; Gouled v. United States, 255 U.S. 298, 312, 313, 41 S.Ct. 261, 266, 65 L.Ed. 647; Waldron v. United States, 95 U.S.App. D.C. 66, 69–70, 219 F.2d 37, 41; and compare Keen v. Overseas Tankship Corp., 2 Cir., 194 F.2d 515. But the rule is one of practice and is not without exceptions, nor is it to be applied as a hard-and-fast formula to every case regardless of its special circumstances. Cogen v. United States, supra, 278 U.S. at pages 223, 224, 49 S.Ct. at page 119; Gouled v. United States, supra, 255 U.S. at pages 312, 313, 41 S.Ct. at page 266. * * *"