**UNITED STATES of America**
**v.**
**Joseph CALABRO, Dieter Martin and Walter Normann, Defendants.**

**No. 67 Cr. 66.**

United States District Court
S. D. New York.

Oct. 24, 1967.

Robert M. Morgenthau, U. S. Atty., by Douglas S. Liebhafsky, New York City, for the Government.

Nathan S. Jaffe, New York City, for defendants, Walter Normann and Dieter Martin.

Joseph Aronstein, New York City, for defendant, Joseph Calabro.

CANNELLA, District Judge.

Defendants' application,* pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress the use, as evidence in this case, of the items seized in the defendant Walter Normann's

apartment at the time of his arrest, is granted.

The defendants are charged in Indictment 67 Cr. 66 with one conspiracy and six substantive counts of offenses relating to the operation of illegal stills and the possession of non-tax paid alcohol.

This suppression hearing is the direct result of a prior decision of this court holding the search warrant, the basis of the seizure of the items in question, to be illegal and void. The Government contends that the search was valid, despite the invalidity of the warrant, because it was incident to a valid arrest.

█ Any agent, investigator or other Internal Revenue officer may make an arrest without a warrant if he has probable cause to believe that a felony is being committed in his presence. 26 U.S.C. § 7608(a) (3). The test as to whether an agent has probable cause to make a felony arrest without a warrant is whether " * * * .the facts and circumstances known to [him] warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); United States v. Drummond, 354 F.2d 132, 153 (2d Cir. 1965).

Since the agents have testified that they saw the still and paraphernalia connected with it and smelled the familiar odor of fermenting mash and residue, the court finds that there was sufficient probable cause to support an arrest without a warrant.

However, there is a serious constitutional issue in this case. The defendant Walter Normann contends that the agents violated his rights under the Fourth Amendment in obtaining the information which constituted probable cause for his arrest and that therefore the search was not incident to a valid arrest.

The structure in which the stills were found was a set back on the lower roof

* The defendant Joseph Calabro's application for severance for the purposes of this motion, made at the time of the hear- ing, having been granted, this decision applies solely to the defendants Dieter Martin and Walter Normann.

of an eight story commercial building. It is the uncontroverted testimony of the defendant Walter Normann, the custodian of the building, that his work caused him to remain in the building at least five nights a week and that his employer had furnished this structure and the lower roof on which it was situated as a convenient residence for him.[1] Indeed, as evidence of defendant Normann's exclusive possession and use of the lower roof is the fact that he built a sundeck in front of the structure.

The record indicates that the commercial building at 520 West 36th Street, in Manhattan, was placed under surveillance by the Alcohol and Tobacco Tax Division of the Internal Revenue Service on or about March 11, 1964 and that this surveillance continued until approximately 10:45 P. M. on March 20, 1964 when it terminated with the arrests of Dieter Martin and Walter Normann.

■ Although the surveillance took place from the street, the eighth floor roof of the building and the lower roof of the building, the court finds that the credible evidence fails to indicate any facts, except those obtained by the agents on the lower roof, which would give the agents surveilling the building any reasonable grounds to believe that the defendants were committing any crime. The Court therefore finds that it was only the information obtained by the agents while they were at the rear window of the structure on the lower roof of the building, which gave them sufficient probable cause to make a warrantless arrest.

The agents entered the building through a commonly used doorway on the 35th Street side of the building and climbed a stairway which led to the eighth story roof. They walked across the roof and climbed down a fire escape on the rear side of the building to the lower roof. Once on the lower roof they walked around to the rear of the structure situated thereon and peered through the rear windows. It was while standing on this lower roof and peering through the windows that the agents smelled the odor of fermenting mash and saw the stills and paraphernalia connected with them. At this time they were trespassers.

■ It is well settled that the Fourth Amendment right of protection against unreasonable search and seizures belongs to the guilty as well as the innocent, the despicable as well as the admirable. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Brock v. United States, 223 F. 2d 681 (5th Cir. 1955). Thus even though the agents had probable cause to make a warrantless arrest, since that probable cause was obtained by trespass in violation of the defendant Normann's Fourth Amendment rights, the arrest was rendered illegal.

The cases dealing with searches involving physical trespass on land or other property are not uniform. There is a common thread in many of them to the effect that a mere physical trespass on land will not vitiate a search otherwise valid.[2] However, most of these cases dealing with this problem assume, either tacitly or explicitly, that the protection of the Fourth Amendment is co-extensive with the area around a residence or cluster of residential buildings known at common law as the curtilage. Although there have been many arguments, conflicting cases and discrepancies as to where curtilage begins and ends it has

---

1. The court cannot accept the Government's position that the mere fact that defendant Walter Normann had a home in Monroe, New York where his wife and children resided prevented the structure in question here from being considered a residence.

The uncontroverted evidence demonstrated that Dieter Martin was also using this shed as a residence.

2. See: Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); United States v. Young, 322 F.2d 443 (4th Cir. 1963); United States v. Sorce, 325 F.2d 84 (7th Cir. 1963); Monnette v. United States, 299 F.2d 847 (5th Cir. 1962); United States v. Benson, 299 F.2d 45 (6th Cir. 1962); United States v. Potts, 297 F.2d 68 (6th Cir. 1961).

been held that " * * * standing on a man's premises and looking in his bedroom window is [clearly] a violation of his 'right to be let alone' as guaranteed by the Fourth Amendment." Brock v. United States, supra at 685.

█ Based on all of the credible evidence presented at the hearing, this court finds that the structure on the lower roof was the residence of Walter Normann and that the only evidence [3] to support the probable cause for the arrest of Walter Normann and Dieter Martin was obtained in violation of their constitutional rights under the Fourth Amendment. The arrest therefore, was invalid and illegal. The search of the apartment at the time of the arrest therefore, was not incident to a valid arrest and the court orders the suppression of the items seized as the result of that search.

So ordered.

3. Although there were observations from the eighth floor roof of bottles being brought into the structure, the court finds this evidence to be tainted by the illegality of the earlier evidence.