UNITED STATES of America

v.

Eduardo Eladio GARCIA–SARQUIZ,
Defendant.

No. 67–CR–412.

United States District Court
E. D. New York.

March 20, 1968.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., by Ronald Gene Wohl, Asst. U. S. Atty., for the United States.

Dimitrios C. Fotopoulos, New York City, for defendant.

Memorandum of Decision and Order

MISHLER, District Judge.

Defendant moves pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure to suppress for use as evidence four plastic bags, allegedly containing heroin hydrochloride, that were seized by agents of the Federal Bureau of Narcotics during a search of an apartment tenanted by defendant and one Eduardo Norman.

The indictment under which defendant has been charged contains two counts: the first asserts that he knowingly concealed and facilitated the concealment of approximately 75.10 grams of heroin knowing the same to have been imported and brought into this country contrary to law; [1] and the second alleges that he unlawfully purchased the same quantity of the aforesaid narcotic drug, which drug was neither in nor from the original stamped packages bearing the requisite tax stamps.[2] Both counts of the indictment rest upon the seizure of heroin that resulted from the questioned search.

A hearing was held on February 7, 1968 and the testimony and exhibits disclosed the following sequence of events:

(1) On December 19, 1966, a fugitive warrant was issued in San Juan, Puerto Rico for the arrest of Marcos Roberto Hernandez Huertas (Huertas) under a three-count indictment charging Huertas with certain violations of the narcotics laws.

(2) On May 4, 1967, a warrant was issued in the Southern District of New York for the arrest of Eduardo Norman under an indictment charging Norman with the unlawful transportation and smuggling of marihuana.

(3) On September 4, 1967, defendant and Norman took up residence at the ground floor apartment of 83–15 Vietor Avenue, Queens, New York, a three-story multiple dwelling.

(4) In the afternoon of September 5, 1967, Agent John O'Leary, while sitting in a parked car in a parking field located at 96th Street and the Henry Hudson Parkway, New York, New York, observed a narcotics agent purchase a quantity of heroin from Huertas and defendant. It appears that at the time of the sale, another person, an informant, was also in defendant's automobile, a red and white Ford bearing Florida plates.

(5) Agent O'Leary followed defendant's vehicle as it left the parking area. The informant exited the car at West End Avenue and 96th Street, and Huertas got out at 306 East 96th Street. When the Ford left the latter address, Agent O'Leary remained in the area watching for Huertas, while two other agents continued to follow defendant.

(6) On September 7, 1967, while on surveillance in the vicinity of 83–15 Vietor Avenue, Agent Dennis Raugh saw Huertas enter said premises on two different occasions. Shortly thereafter, Agent Raugh first received information

[1]. 21 U.S.C. § 174 (1964).

[2]. 26 U.S.C. § 4704(a) (1964).

that there was a fugitive warrant outstanding for Huertas.

(7) On the morning of September 8, 1967, Agent Raugh saw Norman get into a car at 96th Street and West End Avenue and drive to 57th Street and 8th Avenue, where he met Huertas.

(8) After spending about twenty minutes in a barbershop in the vicinity of 57th Street and 8th Avenue, Norman and Huertas drove to the vicinity of 83-15 Vietor Avenue and entered the aforesaid premises.

(9) The entrance to the building in question is one step above the street level. Passing through the outer door, which is composed partly of glass, one enters a common passageway, approximately ten feet in length, at the far end of which is the apartment defendant was occupying at the time. In the hallway there is also a staircase which leads to the apartments above.

(10) After watching the suspects enter the premises, Agent Raugh called for additional agents. In response to his request, Agent O'Leary and Agents Glenn Cooper and Arthur Goldenbaum appeared on the scene. The four agents took up positions outside the building.

(11) At this time none of the agents was aware either that defendant was residing at the aforesaid address, or that he was then on the premises. The agents had assembled for the purpose of placing Huertas under arrest.

(12) A few moments after the three other agents joined Agent Raugh, Norman and Huertas left the ground floor apartment, snap locking the apartment door behind them. When they reached the sidewalk, however, they were arrested, and a quick search of their persons yielded two ounces of heroin from Huertas and the key to the apartment within from Norman.

(13) Thereupon, the agents proceeded to the apartment with their quarry.

Agent Raugh, using the key that he had obtained from Norman, and failing either to identify himself or to announce his purpose, opened the door and entered the apartment. Inside the agents found defendant and placed him under arrest as well.

(14) A search of the apartment again bore fruit; the agents found four packages of a white powder, later determined to be heroin hydrochloride, in a brown attache case discovered in the living room closet. The suppression of these packages is the object of the present motion.

### Reasonableness of Search

The government maintains that the warrantless perquisition of defendant's apartment was a lawful concomitant of either the arrests of Norman and Huertas, which were effected on the sidewalk in front of the subject premises, or defendant's arrest, which occurred inside of the apartment.

Several days prior to the date of the arrests, Agent O'Leary had witnessed defendant participate in a sale of a quantity of heroin. Therefore, if the agents knew or had reasonable grounds to believe that defendant was in the ground floor apartment of 83-15 Vietor Avenue on September 8, 1967, they could have lawfully entered the apartment and placed defendant under arrest.[3]

At the hearing on this motion, however, Agents O'Leary and Raugh indicated that they had become aware of defendant's presence inside of the apartment in the following manner: At one point during their surveillance of 83-15 Vietor Avenue, Agents O'Leary and Raugh were standing on the sidewalk approximately ten feet directly in front of the outer door of the aforesaid premises. At about that same time, Huertas opened the building's outer door and, at precisely the same instant, Norman passed through the door to the apartment. As a result, the agents were able to see

---

3. 26 U.S.C. § 7607(2) (1964).

into the apartment, which was at the far end of a ten foot hallway, and caught a glimpse of defendant, who was crossing in front of the doorway. After placing Norman and Huertas under arrest, the agents proceeded to the apartment and seized the defendant. Thereupon, the agents searched the apartment and discovered the heroin that is the subject matter of this motion.

■ The defendant and Norman controverted the agents' version of the events that immediately preceded the former's arrest, and the court concludes that the government failed to sustain its burden of showing that the agents possessed the requisite knowledge or belief concerning defendant's whereabouts. See, United States v. Rivera, 321 F.2d 704, 708 (2d Cir. 1963). Accordingly, unless the agents had the right to enter and search the apartment as an incident of the arrests of Norman and Huertas, they were trespassing when they entered defendant's residence, and any items seized as a result of the search conducted therein must be suppressed. See, United States v. Calabro, 276 F.Supp. 284, 286 (S.D.N.Y.1967).

■ The authority to search incident to a valid arrest represents one of the "jealously and carefully drawn" exceptions to the fundamental precept that a search must rest upon a search warrant. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). See also, United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). The fact that there has been a lawful arrest, however, does not give law enforcement officers carte blanche to rummage through an arrestee's papers, see, Carlo v. United States, 286 F.2d 841, 846 (2d Cir. 1941), or to conduct a general or exploratory

search of his residence. See, United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). Their right to conduct warrantless intrusions into another's privacy is based upon a traditional recognition of the practical necessities of police work; the need to seize weapons and other instruments which might be used to assault the arresting officer or to effect an escape; and the need to prevent the destruction of evidence or fruits of the crime. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). "But these justifications are absent where a search is remote in time or place from the arrest." Preston v. United States, supra. See also, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). A search incident to an arrest is violative of Fourth Amendment rights unless it is both "substantially contemporaneous" with and confined to the "immediate vicinity" of the arrest. Stoner v. State of California, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964).

The courts have refused, however, to draw any hard and fast lines in applying the above quoted criteria to questioned searches. Instead, taking their lead from the language of the fourth amendment itself,[4] the courts have sought to determine whether the search was "reasonable" under the particular circumstances. See, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

In the case at bar, while there is no temporal problem concerning the search of the apartment, there is a serious question as to whether its effectuation exceeded the relevant spatial limitations.

■ Where an arrest is actually effected in a suspect's home, the arresting

4. AMENDMENT IV—SEARCHES AND SEIZURES

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

officers appear to have a fairly wide latitude in conducting a search of the residence. Indeed, in one case, a five hour perquisition of a four room apartment was approved. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). See also, Garrett v. United States, 382 F.2d 768 (9th Cir. 1967); Garcia v. United States, 381 F.2d 778 (9th Cir. 1967). Moreover, where an accused is arrested in his hallway, or in the doorway of his apartment, searches of other parts of the hallway or of the apartment are permissible. See, Murray v. United States, 351 F.2d 330 (10th Cir. 1965), cert. denied, 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211 (1966); Williams v. United States, 260 F.2d 125 (8th Cir. 1958), cert. denied, 359 U.S. 918, 79 S.Ct. 596, 3 L.Ed.2d 579 (1959); United States v. Halsey, 257 F.Supp. 1002 (S.D. N.Y.1966); United States v. Vasquez, 183 F.Supp. 190 (E.D.N.Y.1960). Furthermore, where the alleged violator is observed entering a house empty-handed, and reappears shortly thereafter in possession of contraband or other property subject to seizure, a search of the room from which he apparently removed the proscribed items will be upheld. See, e. g., Clifton v. United States, 224 F.2d 329 (4th Cir.), cert. denied, 350 U.S. 894, 76 S.Ct. 152, 100 L.Ed. 786 (1955). See also, United States v. Halsey, supra.

Nevertheless, there have been indications in some of the cases that for the purpose of determining whether a search sought to be sustained as an incident of a lawful arrest was confined to the "immediate vicinity" of the arrest, the closed door of a home may constitute an important and symbolic barrier. On at least two occasions, the second circuit has expressly reserved decision on this question. For instance, in United States v. Mont, 306 F.2d 412 (2d Cir.), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962), the defendant was seen inside the threshold of his apartment in the possession of certain glassine envelopes. In attempting to escape, he fled, slamming the apartment door shut behind him. The court, obviously troubled by the subsequent search of the apartment, emphasized that under the circumstances it was not called upon to decide that question. More recently, where a suspect was arrested after he had inserted his key into his apartment door, the court of appeals stated that the question raised by the search of the arrestee's person was different from that raised by the search of his residence. United States v. Beigel, 370 F.2d 751, 755 (2d Cir. 1967).

The Supreme Court, in several cases which did not rest upon the precise issue involved here, refused to approve certain warrantless searches of homes where the arrest upon which they had been predicated had occurred outside of the premises. See, James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965) (per curiam); Jones v. United States, supra;[5] Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957) (per curiam).[6] See also, Agnello v. United States, supra.[7] In

---

5. "Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within the home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." 357 U.S. at 498, 78 S. Ct. at 1257.

6. In *Kremen*, the federal agents had arrest warrants for only two of the four men that were under surveillance. The agents arrested the two suspects to whom the warrants pertained outside of the

cabin, and took the other two into custody inside of the premises. Although a subsequent search of the cabin was held to have been unreasonable, the Court appeared to emphasize the fact that the entire contents of the house were seized and then examined at the F.B.I. offices two hundred miles away. 353 U.S. at 347, 77 S.Ct. at 829.

7. "The right * * * to search the place where the arrest is made * * * does not extend to other places." 269 U.S. at 30–31, 46 S.Ct. at 5.

*James,* the petitioner had been arrested several blocks from his residence, yet the police officers drove him home, broke open the door, and conducted an extensive search. The Court held that the search of the petitioner's dwelling had not been an incident of his arrest.[8]

 This court concludes that under the particular circumstances of this case, and in light of the fundamental nature of the interests involved, the search of defendant's apartment cannot reasonably be supported as having been effected within the "immediate vicinity" of the arrests of Norman and Huertas. See, Page v. United States, 282 F.2d 807 (8th Cir. 1960);[9] United States v. Scott, 149 F.Supp. 837 (D.D.C.1957).[10] See also, United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir. 1968). But see, King v. Pinto, 256 F.Supp. 522, 523 (D.N.J.1966), aff'd per curiam, 376 F.2d 593 (3d Cir. 1967). It is, therefore,

Ordered that the motion is granted. The heroin hydrochloride, found in four separate packages, is suppressed for use as evidence, and the government is directed to return the attache case in which the contraband was uncovered.

The court having been advised that the seized contraband represents the government's only evidence of the crimes charged, and that the preclusion of its use as evidence would be fatal to the government's case, it is, therefore,

Ordered that the indictment be and the same hereby is dismissed.

8. James v. State of Louisiana, supra, 382 U.S. at 37, 86 S.Ct. at 151.

9. In *Page,* the defendant was arrested on the steps of his house just as he was about to open the door and enter the premises. The agents found heroin and marked money on his person, but the court held that the search of the second floor had been beyond the proper bounds of a search incident to the arrest. 282 F.2d at 813.

10. As the defendant was appproaching the building, he noticed the agents and tried

to walk away. After he was caught and placed under arrest on the street, he was brought to the apartment, where a search ensued. The Court ruled that the distance between the place of the arrest and the apartment was irrelevant. Instead, the significant fact was that the arrest and the search occurred in different places. While the court appears to have distinguished its case from a case where a defendant is arrested as he is leaving his apartment, this court declines to apply any such distinction to the facts of this case.